

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COLBURN FAMILY FOUNDATION,

       Plaintiff,

- against -

CHABAD'S CHILDREN OF CHERNOBYL,
TZEIREI CHABAD, and FRIENDS OF
TZEIREI CHABAD IN ISRAEL, INC.,

       Defendants.

<u>OPINION AND ORDER</u>

06 Civ. 2351 (PKL)

**APPEARANCES**

BORGES & ASSOCIATES, LLC
Wanda Borges
575 Underhill Boulevard
Suite 110
Syosset, NY 11791

<u>Attorney for Plaintiff</u>

ELLIOT WALES LAW OFFICES
Elliot Wales
52 Riverside Drive
New York, NY 10024

<u>Attorney for Defendants</u>

**LEISURE**, **District Judge**:

Plaintiff, Colburn Family Foundation ("Colburn"), moves this Court for an Order of Default Judgment against defendants, Chabad's Children of Chernobyl ("CCOC"), Tzeirei Chabad ("TC"), and Friends of Tzeirei Chabad In Israel, Inc. ("FTCI"), (collectively, the "Chabad defendants"), for failure to comply with the terms of a settlement agreement.  For the reasons set forth below, Colburn's motion is GRANTED.

**BACKGROUND**

Colburn is a not-for-profit organization with a principal place of business in the Commonwealth of Virginia.  (Compl. ¶ 1.)  Defendant TC is an Israeli not-for-profit organization with a principal place of business in Israel.  (Id. ¶ 3.)  Defendants CCOC and FTCI are not-for-profit corporations incorporated in New York with principal places of business in New York.  (Id. ¶¶ 2 & 4.)  FTCI is a subsidiary of TC and CCOC is an independent organization under the umbrella of TC.  (Id. ¶¶ 7-8.)  Rabbi Joseph Aronov, a non-party to this action, is the CEO of the three Chabad defendants.  (See Affirmation of Rabbi Joseph Aronov ("Aronov Aff.") ¶ 1.)

On or about October 15, 2004, Colburn lent $500,000 to CCOC in consideration for a promissory note whereby CCOC, its parent, and/or any subsidiaries promised to pay Colburn on December 14,

2

2004, the sum of $500,000 with interest of 2% per annum accruing from October 15, 2004.  (Compl. ¶¶ 9-10.)  After the Chabad defendants failed to remit any payment to Colburn by December 14, 2004, Colburn agreed to extend the due date of the outstanding loan and the parties executed a replacement promissory note on July 27, 2005.  (Id. ¶¶ 11-12.)  The replacement promissory note required CCOC, its parent, and/or subsidiary to pay to Colburn by September 15, 2005, the principal amount and interest from July 27, 2005 at the rate of 2% per annum.  (Id. ¶ 13.)  Rabbi Aronov signed both the October 15, 2004 and July 27, 2005 promissory notes on behalf of the Chabad defendants and agreed that they "would pay any and all costs associated with the due enforcement of the two promissory notes, including, but not limited to, attorneys fees and costs." (Id. ¶ 16.)  The Chabad defendants did not remit any payment to Colburn by September 15, 2005.  (Id. ¶ 14.)

Colburn initiated this action on March 27, 2006, seeking entry of judgment against the Chabad defendants in the sum of $500,000 plus 2% interest from July 27, 2005, and costs and attorneys fees associated with the enforcement of the two promissory notes.  (Id. 3-4.)  Without submitting any responsive pleading and without retaining counsel to appear in this action, on May 31, 2006, the Chabad defendants entered into a Stipulation of Settlement ("Settlement Agreement") directly with

3

Colburn, which was so-ordered by this Court on October 3, 2006.[1]
(See Settlement Agreement, dkt. no. 8; Wanda Borges Affirmation
in Supp. of Mot. for Default J. ("Borges Aff.") ¶ 6.)  Pursuant
to the Settlement Agreement, the Chabad defendants agreed to pay
the outstanding principal amount of $500,000 plus $20,050[2] for
the costs associated with enforcing the two promissory notes,
including but not limited to attorneys' fees and costs, pursuant
to a payment schedule:  (1) $50,000 by June 9, 2006; (2) $25,000
by June 29, 2006; (3) $25,000 by July 19, 2006; and (4) $10,000
per month by the fourth of each subsequent U.S. calendar month
until the remaining balance (including the $20,050) was paid in
full.  (Settlement Agreement, § 2, ¶ 1(a)-(d).)  The Settlement
Agreement also contains a provision defining an event of default
as, among other things, "[f]ailure to pay any installment of the
within settlement, when due."  (Id. § 3, ¶ 1.)  The Settlement
Agreement further provides the following instruction should a
default occur:

> In the event of default in payment, notice
> of such default shall be mailed by ordinary
> mail to the Defendants, and should such
> default remain uncured for five (5) business

---

[1] On June 29, 2006, this action was placed on the Court's suspense docket,
pending the parties' full compliance with the Settlement Agreement, and was
reinstated to the Court's active docket on June 16, 2010, after the Court was
apprised of Colburn's intention to file a motion for default judgment against
the Chabad defendants.  (See Orders, 6/29/06 & 6/16/10, dkt. nos. 7 & 9.)

[2] The Settlement Agreement provides three different amounts as the cost for
enforcing the promissory notes:  $22,080 (Settlement Agreement, dkt. no. 8, §
2, ¶ 1); $20,080 (id. § 2, ¶ 1(d)); and $20,050 (id. § 3, ¶ 3).  Because
Colburn refers to the amount as $20,050, the Court adopts this sum.

> days from the date of mailing of such notice
> as provided above, then Plaintiff may enter
> judgment against the Defendants without
> further notice for the full sum of $500,000,
> plus interest to the date of default,
> $20,050.00 in costs associated with the due
> enforcement of the two promissory notes,
> including, but not limited to, attorneys'
> fees and costs, and statutory costs,
> crediting Defendants upon execution for any
> payments made hereunder.

(Id. § 3, ¶ 3 (emphasis in original).)  The Settlement Agreement

also permits Colburn to "recover, from any and all of the

Defendants, the reasonable attorney's fees and costs it incurs

in the enforcement of the terms of this Agreement." Id. § 3, ¶

5.

Pursuant to the Settlement Agreement, Colburn received

payments from the Chabad defendants until December 18, 2008,

after which the payments ceased. (Colburn's Mem. of Law

("Colburn Mem.") 2.)  Colburn now moves for default judgment

under section three of the Settlement Agreement, on the grounds

that the Chabad defendants paid only $294,000 and failed to cure

their default within five business days after Colburn's June 8,

2010 notice of default. (Id.; James Lintott Decl. in Supp. of

Mot. for Default J. ("Lintott Decl.") ¶ 14 & Ex. C.)  Colburn

seeks judgment for the remaining principal balance of $206,000,

plus $20,050 in costs under the Settlement Agreement, 2%

interest per annum from July 25, 2005 to the date of entry of

judgment, and attorneys' fees of $10,719, representing the fees

incurred by Colburn in enforcing the Settlement Agreement. (Colburn Mem. 4-5.)

## DISCUSSION

The Court first addresses the law governing the enforcement of settlement agreements.  Then the Court analyzes the parties' arguments and holds that the Settlement Agreement is valid and enforceable.

### I. Law Governing Settlement Agreements

"A settlement agreement is a contract that is interpreted according to general principles of contract law."  Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007); see also Universal Outdoor, Inc. v. City of New Rochelle, 286 F. Supp. 2d 268, 274 (S.D.N.Y. 2003) ("In New York, the meaning of a settlement agreement is construed according to general principles of contract law.").  "'[A] stipulation is generally binding on parties that have legal capacity to negotiate, do in fact freely negotiate their agreement and either reduce their stipulation to a properly subscribed writing or enter the stipulation orally on the record in open court.'"  Katel Ltd. Liab. Co. v. AT & T Corp., 607 F.3d 60, 65 (2d Cir. 2010) (quoting McCoy v. Feinman, 99 N.Y.2d 295, 302, 785 N.E.2d 714 (2002)); see also Powell, 497 F.3d at 128 ("Once entered into, [a settlement agreement] is

6

binding and conclusive."). "'[C]ourts should not disturb a valid stipulation absent a showing of good cause such as fraud, collusion, mistake or duress[,] or unless the agreement is unconscionable or contrary to public policy[,] or unless it suggests an ambiguity indicating that the words did not fully and accurately represent the parties' agreement." Katel, 607 F.3d at 65-66 (quoting McCoy, 99 N.Y.2d at 302).

"Stipulations of settlement are favored by the courts and not lightly cast aside." Hallock v. State, 64 N.Y.2d 224, 230, 485 N.Y.S.2d 510 (1984) (Kaye, J.) (upholding stipulation of settlement over plaintiff's objection, made more than two months after the settlement was executed, that counsel did not have authority to enter into settlement on the terms embodied in the stipulation). A party seeking to void a contract bears the burden of proving that the contract is invalid. See Int'l Halliwell Mines, Ltd. v. Cont'l Copper & Steel Indus., Inc., 544 F.2d 105, 108 (2d Cir. 1976) ("[U]nder New York law a party seeking to avoid his contractual obligations on grounds of economic duress shoulders a heavy burden."); Sun Forest Corp. v. Shvili, 152 F. Supp. 2d 367, 393 (S.D.N.Y. 2001) ("Under New York law, a party claiming that it was unduly influenced to enter a contractual relationship must prove that it contracted under circumstances indicating that a relationship of control existed and that the stronger of the two parties had exerted

influence over the other to destroy the weaker party's free will and substitute for it the will of the [other]." (citation and internal quotation marks omitted)).  "'Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation.'"  Matter of Estate of Rosenhain, 597 N.Y.S.2d 782, 783, 193 A.D.2d 903 (App. Div. 1993) (quoting Hallock, 64 N.Y.2d at 230).  "If the releasing party does not promptly repudiate the contract or release, he will be deemed to have ratified it."  VKK Corp. v. Nat'l Football League, 244 F.3d 114, 122-23 (2d Cir. 2001). Accordingly, "[t]he burden on a party seeking to avoid contractual obligations on the grounds of economic duress 'increases proportionately with the delay in . . . repudiating the contract in question.'"  Id. at 123 (quoting Int'l Halliwell, 544 F.2d at 108); see also DiRose v. PK Mgmt. Corp., 691 F.2d 628, 634 (2d Cir. 1982) (collecting cases where delays ranging from six months to two years constituted waiver).

## II.  Analysis

The Chabad defendants do not dispute that they are in default and acknowledge "the importance of resolving this matter and satisfying Colburn," although they claim that they paid Colburn $340,000 rather than $294,000.  (Aronov Aff. ¶ 7; see

8

also Affirmation of Defs.' Counsel Elliot Wales ("Wales Aff.") ¶
9.)[3]  The Chabad defendants seek to vacate and renegotiate the
Settlement Agreement on the grounds that the Agreement "is the
product of overreaching by plaintiff's counsel."  (Wales Aff. ¶
11(I).)  The Chabad defendants state that the Settlement
Agreement is invalid because Rabbi Aronov, who entered into the
Settlement Agreement on behalf of the Chabad defendants, is a
native speaker of Hebrew and Yiddish, not English, "is not aware
of basic litigation and legal rights of federal court
litigants," was unrepresented at the time of signing the
Settlement Agreement, "is not in the business of lending money,"

---

[3]   The Court notes several deficiencies in the submissions by counsel to the
Chabad defendants, Elliot Wales, Esq.  First, defendants' papers in
opposition to Colburn's motion for default judgment consist of two
affirmations—one from Mr. Wales and one from Rabbi Aronov—and do not contain
a memorandum of law, as required by Local Civil Rule 7.1(a).  See Local Civ.
R. of U.S. Dist. Cts. for S.D.N.Y. & E.D.N.Y. ("Local Civ. R.") 7.1(a).
Second, the Chabad defendants did not electronically file their opposition
papers timely, in violation of Local Civil Rule 5.2 and a Court Order.  See
Local Civ. R. 5.2; Order, 7/15/10, dkt. no. 23.  Third, defendants' affidavit
of service erroneously states that "The United States District Court" was
served on August 4, 2010, when no attempt to send the Court defendants'
opposition papers was made until August 12, 2010.  (See Aff. of Svc., dkt.
no. 27, at 9.)  Fourth, without requesting, let alone receiving, leave of the
Court, Mr. Wales filed a sur-reply affirmation in further opposition to
Colburn's motion for default judgment on August 31, 2010, and a memorandum of
law in opposition to Colburn's motion for default judgment on September 6,
2010, in violation of the Court's scheduling order and Individual Practices.
     Given these continued infractions, the Court directs Mr. Wales to consult
the Federal Rules of Civil Procedure, the Local Civil Rules, and this Court's
Individual Practices prior to making any further submissions.  Because this
is a motion for default judgment, in the interest of justice, the Court
considers defendants' submissions, and holds that:  (1) the substance of Mr.
Wales's August 31 sur-reply, which pertains almost exclusively to the
parties' dispute over the amount in default, shall be referred to Magistrate
Judge Ellis for resolution; and (2) the request in Mr. Wales's September 6
memorandum for Rule 11 sanctions against Colburn's counsel is denied because,
in addition to Mr. Wales's failure to comply with the procedures set out in
Rule 11(c)(2), the Court holds on the merits that there was no impropriety by
Colburn or its counsel that warrants sanctions.

and was not advised by Colburn's counsel to retain counsel. (Id. ¶¶ 5-7, 11(B) (emphasis in original).) The Chabad defendants also ask the Court "to take judicial notice that after December 2008 the financial crisis struck the United States and much of the world." (Id. ¶ 10.)

The Court holds that the Settlement Agreement constitutes a valid and binding contract between the parties. Rabbi Aronov, as CEO, had authority to bind the Chabad defendants. See Marfia v. T.C. Ziraat Bankasi, 100 F.3d 243, 251 (2d Cir. 1996) (stating that implied authority may arise "solely from the designation by the principal of a kind of agent who ordinarily possesses certain powers") (citation and internal quotation marks omitted); Telenor Mobile Commc'ns AS v. Storm LLC, 524 F. Supp. 2d 332, 354 n.10 (S.D.N.Y. 2007) (Lynch, J.) (holding that defendant corporation's general director "had actual authority to bind [defendant] to the arbitration agreement simply by virtue of his status as [defendant's] General Director"); Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. Kommanditgesellschaft v. Republic of Romania, 123 F. Supp. 2d 174, 185-86 (S.D.N.Y. 2000) (Sprizzo, J.) ("[C]ertain agents possess authority which is 'inherent' or 'incidental' to the ordinary scope of authority associated with their position."). The pertinent question is whether the Settlement Agreement is void because the Chabad defendants did not retain counsel at the

time they entered into the Agreement.  The Court holds in the
negative.

        "'It is settled law that a corporation may not appear in a
lawsuit against it except through an attorney, and that, where a
corporation repeatedly fails to appear by counsel, a default
judgment may be entered against it pursuant to Rule 55.'"  Grace
v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 192 (2d Cir.
2006) (quoting SEC v. Research Automation Corp., 521 F.2d 585,
589 (2d Cir. 1975)).  During the approximately two-month span
between the initiation of this action and the parties' execution
of the Settlement Agreement, the Chabad defendants never
appeared in this action—that is, they never filed an answer,
motion, or appeared physically in open court.  Moreover, Rabbi
Aronov consulted an attorney, Aaron Golub, Esq., to obtain a
thirty-day extension of time to answer Colburn's Complaint so
that the parties could settle the case, but did not retain Mr.
Golub as counsel to the Chabad defendants.  (See Wanda Borges
Reply Affirmation in Supp. of Mot. for Default J. ("Borges Reply
Aff.") ¶¶ 18-19 & Ex. A (Ltr. from Aaron Golub to Wanda Borges,
4/12/06 ("This letter shall confirm that while we are not
appearing as counsel in this case you have graciously granted
Chabad a thirty day extension.")).)

        Even if the Chabad defendants appeared in this action
without counsel, under New York law, a corporate defendant's

11

failure to appear by counsel "provides no basis for vacating a
judgment entered against that defendant" because the rule
requiring a corporation to appear by counsel "is not intended to
penalize an adverse party for the corporation's improper
appearance, but is rather to ensure that the corporation has a
licensed representative who is 'answerable to the court and
other parties for his or her own conduct in the matter.'"
Jimenez ex rel. Disla v. Brenillee Corp., 852 N.Y.S.2d 94, 95,
48 A.D.3d 351 (App. Div. 2008) (quoting Matter of Sharon B., 72
N.Y.2d 394, 398, 530 N.E.2d 832 (1988) (Kaye, J.)); see also
Lake George Park Comm'n v. Salvador, 664 N.Y.S.2d 847, 850, 245
A.D.2d 605 (App. Div. 1997) (finding "no merit" to defendants'
claim "that the judgment entered should not bind" a corporate
defendant that did not appear by counsel because the New York
statute that requires corporations to appear by counsel "'is not
intended to penalize the adverse party for the corporation's
improper appearance'" (quoting King Shell Serv. Station v.
Robert S. Douglas Co., 430 N.Y.S.2d 484, 486 (Just. Ct. 1980)).
A rule precluding unrepresented corporations from avoiding their
contractual obligations on grounds of choosing not to retain
counsel is appropriate since a corporate defendant's "failure to
appear by counsel would not have deprived the court of
jurisdiction over it, but would have constituted a default
permitting entry of judgment against it."  Jimenez, 852 N.Y.S.2d

at 95; see also Grace, 443 F.3d at 192 ("[W]here a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55." (citation and quotation marks omitted)). Therefore, the fact that Rabbi Aronov, as CEO of the Chabad defendants, consulted with, but "did not avail himself of the opportunity to retain counsel," is insufficient to vacate the Settlement Agreement. People ex rel. Spitzer v. Park Ave. Plastic Surgery, P.C., 852 N.Y.S.2d 111, 112, 48 A.D.3d 367 (App. Div. 2008) (holding that corporations' sole owner did not have standing to assert a claim that a judgment against the corporations was improper because they were not represented by counsel, where the owner "did not avail himself of the opportunity to retain counsel for them").

To the extent that there was uneven bargaining power between the parties as a result of the Chabad defendants being unrepresented, this does not void the Settlement Agreement because the Chabad defendants complied with the terms of the Agreement for nearly two and half years, thereby ratifying the contract.  See Dodge St., LLC v. Livecchi, 32 Fed. App'x 607, 609, 611 (2d Cir. 2002) (affirming district court's holding that a settlement agreement was ratified by performance where the agreement was between pro se defendants, a corporation and its sole owner, and a represented plaintiff); Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc., 165 F. Supp. 2d 514,

13

528 (S.D.N.Y. 2001) (holding that "wait[ing] 20 months from the signing of the Release and [Settlement] Agreement before challenging them . . . is simply too long a period to have waited if [plaintiff] believed it had been coerced into signing"); Joseph F. Egan, Inc. v. City of N.Y., 17 N.Y.2d 90, 98, 215 N.E.2d 490 (1966) ("[T]he proof did not establish duress and . . ., even if it did, the duress was practiced in 1956 and not disaffirmed until 1958, and thus not disaffirmed within a reasonable time."); Fruchthandler v. Green, 649 N.Y.S.2d 694, 696, 233 A.D.2d 214 (App. Div. 1996) ("The claim of economic duress was . . . waived in light of the inordinate length of time which passed between the alleged duress and the assertion of the claim."); Benjamin Goldstein Prods., Ltd. v. Fish, 603 N.Y.S.2d 849, 851, 198 A.D.2d 137 (App. Div. 1993) (holding that "plaintiffs, by their knowing acceptance of payments from [defendant] for more than one year after the agreement was executed before commencing the underlying action, ratified the Settlement Agreement, and are therefore barred from alleging economic duress in its execution").

Contrary to the Chabad defendants' arguments, the terms of the Settlement Agreement are not unfair. First, the Chabad defendants contend that section two of the Settlement Agreement "unfairly required Rabbi Aronov to acknowledge that the Summons and Complaint was served upon all the Chabad institutions in

14

compliance with the technical requirements of the Federal Rules
of Civil Procedures [sic]." (Wales Aff. ¶ 11(E) (emphasis in
original).) This argument is irrelevant since the Chabad
defendants do not contest service of the Summons and Complaint.
Second, the Chabad defendants argue that section six of the
Settlement Agreement "erroneously permits Colburn to enter
judgment without notice for any default." (Id. ¶ 11(G)
(emphasis in original).) This argument is inconsistent with the
text of section six, which states, in relevant part, that "the
parties agree and consent to the entry of a judgment on the
Settlement, if any party defaults on his or its obligations
under this settlement." (Settlement Agreement, § 6.) In any
event, this argument is irrelevant since Colburn provided notice
of the default in its June 8, 2010 letter to each of the Chabad
defendants and Rabbi Aronov. (See Lintott Decl. ¶ 14 & Ex. C.)
Third, defendants contend that the default provisions of the
Settlement Agreement "are not authorized by statute or rules and
usually are the product of negotiations between parties and
their experienced attorneys—a factor fatally missing." (Wales
Aff. ¶ 11(F) (emphasis in original).) This argument is
meritless, as the Chabad defendants do not cite any support for
the proposition that contractual default provisions must be
"authorized by statute or rules." (Id.) Moreover, default
provisions in settlement agreements are commonly enforced. See,

e.g., Kasperek v. City Wire Works, Inc., No. 03 Civ. 3986, 2009
WL 691945, at *1, 4 (E.D.N.Y. Mar. 12, 2009) (granting judgment
in favor of plaintiff for defendants' default under the parties'
settlement agreement, which required defendants to pay
plaintiffs $525,000, plus interest, in designated installments);
Schaefer v. Smigel, No. 08 Civ. 6439, 2009 WL 174795, at *1, 4
(S.D.N.Y. Jan. 22, 2009) (Keenan, J.) (enforcing the terms of a
default provision of a settlement agreement, which required
defendants to pay for reasonable attorneys' fees, costs, and 6%
post-judgment interest that plaintiff incurred in filing,
enforcing, and collecting a judgment); Sheet Metal Workers'
Nat'l Pension Fund v. Jersey Sheet Metal Works, Inc., No. 07
Civ. 0131, 2009 WL 150927, at *1 (E.D.N.Y. Jan. 21, 2009)
(granting plaintiffs' motion to enforce the terms of a default
provision in the parties' settlement agreement, which provides
that, "[u]pon default by defendant(s), defendant(s) consent to
the entry of a judgment against them, jointly and severally,
without further notice, in the amount of $603,542.76, plus
interest of 8.5% per annum, and attorney's fees and costs . . .
from the date the payment was due, less any amounts paid").
Finally, the Chabad defendants state that section three of the
Settlement Agreement "improperly provides for attorney fees,
court costs and interest payments on the . . . sums repaid—
[which] sounds usurious." (Wales Aff. ¶ 11(H).) This argument

16

is inconsistent with the text of section three, which states
that Colburn will "credit[] Defendants . . . for any payments
made hereunder." (Settlement Agreement § 3, ¶ 3.)  Thus, the
Chabad defendants fail to demonstrate that the Settlement
Agreement is unfair.

   The Chabad defendants state that Rabbi Aronov's native
language is Hebrew and Yiddish, not English, thereby implying
that Rabbi Aronov did not comprehend the terms of the Settlement
Agreement. (See Wales Aff. ¶ 5.)  However, nowhere do the
Chabad defendants state that Rabbi Aronov does not speak, read,
or understand English.  Indeed, Rabbi Aronov's own affirmation
is written and signed in English and does not state that it was
translated from another language. (See generally Aronov Aff.)
Also, Rabbi Aronov's substantial compliance with the terms of
the Settlement Agreement for almost two and a half years belies
any suggestion that he was unable to comprehend its terms.  See,
e.g., Lozowsky v. Planet Automall, Inc., No. 07 Civ. 3684, 2009
WL 1910726, at *5 (E.D.N.Y. June 29, 2009) (rejecting
plaintiff's claim that he was unduly influenced to enter into a
contract where plaintiff's claim "rest[ed] solely on his
unconvincing assertions that he is a 'simple man' and not fluent
in English").  Also unconvincing is defendants' claim that CCOC
"is not in the business of lending money." (Wales Aff. ¶ 6
(emphasis in original).)  Here, CCOC received, rather than lent,

17

money and Rabbi Aronov, CCOC's CEO, acknowledges that "Chabad raises millions of dollars annually to finance its operations." (Aronov Aff. ¶ 6.)  For these reasons, the Chabad defendants' claims that Rabbi Aronov did not understand the meaning of the Settlement Agreement and is unfamiliar with business transactions of this kind are belied by Rabbi Aronov's own Affirmation and are wholly insufficient to meet defendants' burden to vacate the Settlement Agreement.

Finally, the Chabad defendants erroneously state that Colburn's counsel was responsible for advising Rabbi Aronov "that <u>institutions are required to appear by counsel in court matters</u>." (Wales Aff. ¶ 11(C) (emphasis in original).)  Adverse counsel may not provide legal advice to an unrepresented party, other than to obtain counsel. <u>See</u> <u>United States v. Dennis</u>, 843 F.2d 652, 657 (2d Cir. 1988) ("If [defense counsel] violated ethical standards . . . by giving advice other than advice to secure counsel to a party that he thought was unrepresented, the sanction . . . should be disciplinary action . . . ."); <u>accord</u> N.Y. R. of Prof'l Conduct 4.3 ("In communicating on behalf of a client with a person who is not represented by counsel, . . . [t]he lawyer shall not give legal advice to an unrepresented person other than the advice to secure counsel if the lawyer knows or reasonably should know that the interests of such person are or have a reasonable possibility of being in conflict

with the interests of the client."). While a lawyer may advise
an unrepresented adverse party to secure counsel, there is no
requirement that the lawyer must provide such advice. See W. T.
Grant Co. v. Haines, 531 F.2d 671, 675 (2d Cir. 1976) ("While it
is true that [the unrepresented defendant] was not advised of
his right to counsel [during a five and a half hour meeting with
plaintiff's counsel], . . . there is no such requirement in a
civil action."); cf. Wales Aff. ¶ 11(B) ("Wanda Borges did not
advise Rabbi Aronov that Chabad should retain New York counsel,
especially one experienced in federal court commercial
litigation." (emphasis in original)). For the foregoing
reasons, the Settlement Agreement constitutes a valid and
binding contract between the parties and shall be enforced
according to its plain terms.

Having held that the Settlement Agreement is enforceable,
the Court holds that the parties' dispute regarding whether the
Chabad defendants paid Colburn $294,000, as Colburn contends, or
$340,000, as defendants contend, shall be referred to Magistrate
Judge Ellis for resolution. The Court also holds that, under
section three of the Settlement Agreement, Colburn is entitled
to interest on the payments in default, including the $20,050 in
costs associated with the enforcement of the underlying
promissory notes, as well as costs and reasonable attorneys'
fees associated with the enforcement of the Settlement

Agreement.  (See Settlement Agreement § 3, ¶¶ 3 & 5.)  Colburn's

counsel submits billing records associated with the enforcement

of the Settlement Agreement in the amount of $10,719.  (Borges

Aff. ¶¶ 19-23 & Ex. 6.)  Where a party seeks attorneys' fees, a

court should

> consider factors including, but not limited
> to, the complexity and difficulty of the
> case, the available expertise and capacity
> of the client's other counsel (if any), the
> resources required to prosecute the case
> effectively (taking account of the resources
> being marshaled on the other side but not
> endorsing scorched earth tactics), the
> timing demands of the case, whether an
> attorney might have an interest (independent
> of that of his client) in achieving the ends
> of the litigation or might initiate the
> representation himself, whether an attorney
> might have initially acted pro bono (such
> that a client might be aware that the
> attorney expected low or non-existent
> remuneration), and other returns (such as
> reputation, etc.) that an attorney might
> expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of

Albany, 522 F.3d 182, 184 (2d Cir. 2008).  Because this action

will continue before Magistrate Judge Ellis, the reasonable

amount of attorneys' fees associated with the enforcement of the

Settlement Agreement cannot be determined at this time.

Therefore, in addition to resolving the amount of payments in

default, the Court refers to Judge Ellis the issue of reasonable

attorney fees.

## CONCLUSION

For the foregoing reasons, Colburn's motion for default judgment is GRANTED. The Court refers the parties' dispute regarding the amount of payments in default to Magistrate Judge Ellis. The Court also requests Judge Ellis to determine the reasonable value of attorneys' fees to be awarded to Colburn in enforcing the parties' Settlement Agreement. The Clerk of Court is asked to close docket number 18.


**SO ORDERED.**
**New York, New York**

September  8 , 2010

_____
                                    U.S.D.J.


Copies of this Opinion and Order have been e-mailed to:

Wanda Borges
Borges & Associates, LLC
575 Underhill Boulevard
Suite 110
Syosset, NY 11791
borgeslawfirm@aol.com

Elliot Wales
Elliot Wales Law Offices
52 Riverside Drive
New York, NY 10024
elliotwales@aol.com