USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/12/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE COLBURN FAMILY FOUNDATION,

                         Plaintiff,

- against -

CHABAD'S CHILDREN OF CHERNOBYL, et al.,

                         Defendants.

**REPORT AND RECOMMENDATION**

06 Civ. 2351 (RMB) (RLE)

**To the HONORABLE RICHARD M. BERMAN, U.S.D.J.:**

## I. INTRODUCTION

On September 8, 2010, the Honorable Peter K. Leisure granted Plaintiff Colburn Family Foundation's ("Colburn") motion for a default judgment against Defendants Chabad's Children of Chernobyl, Tzeirei Chabad, and Friends of Tzeirei Chabad in Israel Inc. (collectively, "Chabad"), for failure to comply with the terms of a stipulated settlement agreement. Following Judge Leisure's retirement, the Honorable Richard M. Berman was assigned the case. The matter has been referred to the undersigned to determine the reasonable value of attorneys' fees to be awarded to Colburn. For the reasons that follow, the Court recommends that Colburn should be awarded **$20,039.92** in attorneys' fees and **$82.86** in costs.

## II. BACKGROUND

On or about October 14, 2004, Colburn lent $500,000 to Chabad in consideration for a promissory note whereby Chabad promised to pay Colburn $500,000 plus interest of 2% per annum. On December 14, 2004, when Chabad was unable to pay, the Parties agreed to execute a replacement promissory note, requiring Chabad to pay Colburn the principal amount plus interest by September 15, 2005. After Chabad again failed to pay, Colburn retained the law firm

of Borges & Associates and initiated this action on March 27, 2006, seeking an entry of judgment against Chabad for the repayment of the promissory notes, and the costs and attorneys' fees associated with the enforcement of the two promissory notes. (James Lintott Decl. in Supp. of Mot. for Attorneys' Fees ("Lintott Decl.") ¶ 4.)

Chabad and Colburn entered into a settlement agreement, which was so-ordered by Judge Leisure on October 3, 2006. (Lintott Decl. ¶ 6.) Pursuant to the agreement, Chabad promised to pay the outstanding principal amount of the $500,000, plus $20,050 for costs associated with enforcing the promissory notes, in a series of regular installments until the entire outstanding balance was paid in full. The agreement further provided that Colburn could recover from Chabad the attorneys' fees and costs it incurred in connection with the pursuit of payment on the promissory notes and for such fees and costs it incurred in the event of any future default. (Lintott Decl. ¶ 7.)

Colburn received regular payments from Chabad until December 2008, when the payments ceased. (Lintott Decl. ¶ 8.) On July 14, 2010, Colburn filed a motion for default judgment, seeking judgment for the remaining principal balance – which it contended was $206,000 – plus interest, $20,050 in costs, and attorneys' fees of $10,719, representing the fees incurred by Colburn in enforcing the agreement. On August 12, 2010, Chabad filed an opposition to Colburn's motion, contending that they had paid more money than Colburn had credited, and that the remaining principal balance was $160,000. (Lintott Decl. ¶ 10.) On September 8, 2010, Judge Leisure granted Colburn's default judgment motion, and referred the matter to the undersigned to determine the amount of payment in default and the reasonable value of attorneys' fees to be awarded Colburn.

At some point after it received Chabad's opposition, Colburn requested Chabad provide

proof as to the additional payments it had made, and Chabad provided wire transfer documentation that enabled Colburn to locate funds that it had received but had not attributed to Chabad's account. (*Id.*) Chabad had sent the money to Colburn via third-party wire transfers, which Colburn contends did not identify that the funds were to be attributed to Chabad's account. (Lintott ¶ 10.)[1] Because Colburn was unable to ascertain to which account the payments were to be applied, Colburn had placed the funds in a segregated account until such a determination could be made. (Lintott Decl. ¶ 12.) Based on the wire transfer information provided by Chabad, Colburn directed the funds in the segregated account to Chabad's note payment, and determined that Chabad's outstanding balance was $160,000, not the $206,000 it had previously sought. (Lintott Decl. ¶ 11.)

Although the Parties were able to resolve the amount that Chabad was in default, the Parties could not reach an agreement regarding the reasonableness of the attorneys' fees Colburn had incurred. On November 1, 2010, the undersigned held a settlement conference, but the Parties were unable to reach an agreement. The Court set a briefing schedule for Colburn's fee application. Colburn submitted its motion on November 15, 2010, in which it seeks an award of $21,555.67 in attorneys' fees and $82.86 in costs. (Pl.'s Mem. Of Law in Supp. of Mot. for Fees and Costs at 3, Doc. 48.) Chabad submitted its response on November 30, 2010, one day after it was due, and Colburn submitted its reply on December 6, 2010.

---

[1] According to Chabad, all of the payments it made to Colburn except one were made in identical fashion with the necessary identification information attached. (*See* Answering Aff. of Chabad's Comptroller Mordechai Telsner.) Chabad states that Colburn provided payment schedules that were substantially in error because Colburn maintained inaccurate records.

## III. DISCUSSION

### A. Attorneys' Fees

Attorneys' fees are calculated by determining a presumptively reasonable fee. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008), *superceding* 493 F.3d 110 (2d Cir. 2007). To determine a presumptively reasonable fee, courts consider a variety of case-specific factors in order to establish a reasonable hourly rate that "a reasonable, paying client would be willing to pay," and then multiply that rate by the number of hours reasonably spent on the case. *Arbor Hill*, 522 F.3d at 190. Among the case-specific factors to be considered in calculating a fee are the so-called *"Johnson* factors," which include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n. 3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989)).

A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records. *New York State Ass'n for Retarded Children Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983). A district court may exercise its discretion and use a percentage deduction "as a practical means of trimming fat from a fee application," *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation omitted), and the Supreme Court has been careful to note that only those hours "reasonably

expended" are to be awarded. *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983).

**1. Reasonable Hourly Rate**

A reasonable hourly rate is determined by "what a reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 184. In determining a reasonable hourly rate, the court should consider the rates for legal services "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v Stevenson*, 4655 U.S. 886, 895 n. 11 (1984)). Absent special circumstances, the community is presumed to be the district in which the case is litigated. *Arbor Hill*, 522 F.3d at 191. In addition, the court may also rely on its own knowledge of hourly rates charged in private firms to evaluate what is reasonable in the relevant community. *Miele v. New York State Teamsters Conf. Pens. & Retirement Fund*, 831 F.2d 407, 409 (2d Cir. 1987).

The law firm Borges & Associates has represented Colburn since it initiated this action in March 2006. Four attorneys with varying levels of experiences and billing rates have worked on this matter. Wanda Borges, the sole member of Borges & Associates, has practiced for over thirty-one years, and has focused her practice on commercial litigation. (Wanda Borges Decl. in Supp. of Mot. for Attorneys' Fees ("Borges Decl.") at 3.) She worked on this case in 2010, and her billing rate was $465.00 per hour. (*Id.*) Julie Mer, an associate, assisted with the commencement of this action in 2006. (*Id.*) At that time, she had three years of experience, and her billing rate was $200 per hour. (*Id.*) Both Brendan Mockler and Christine Hansen are associates at Borges & Associates and worked on this case in 2010, when their hourly billing rates were $225 per hour. (*Id.*) Hansen has been admitted to practice since 2007, and Mockler since 2008. (*Id.*)

Chabad does not contest the reasonableness of the hourly rates charged (Def.'s Mem. at 1.), and the Court finds that the rates are reasonable based on the attorneys' experience, and the rates approved for comparable attorneys in this District. *See Rozell v. Ross-Hoist*, 576 F. Supp. 2d 537, 544-46 (S.D.N.Y. 2008) (Francis, M.J.) (noting that it is reasonable to award $600 per hour for partners, $350 for senior associates, and $250 for junior associates.)

**2. Reasonable Hours**

In determining whether the hours billed by counsel were reasonably expended, the court should not engage in an "*ex post facto* determination of whether the attorney hours were necessary to the relief obtained." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1999). Rather, the court must evaluate "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Id.* If any expenditure of time was unreasonable, the court should exclude these hours from the calculation. *Hensley*, 461 U.S. at 434. Accordingly, the court should exclude "excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

In order to assess the reasonableness of the hours expended, it is first necessary to summarize the work that Colburn's counsel completed. Colburn's attorneys expended a total of approximately 72 hours on this matter, and billed $21,555.67 in fees. In 2006, Mers spent approximately 5 hours on the case to prepare and send default letters to Chabad in accordance with the terms of the settlement agreement. (Borges Decl. ¶ 6; Borges & Associates Time Slips Submitted on Oct. 19, 2010.) No other time was billed on this case until May 2010, when Borges spent 1 hour communicating with Colburn that Chabad's payments had ceased. (Borges Decl. ¶ 8.) In June and July 2010, Borges, Mockler, and Hansen spent approximately 31 hours drafting and researching the default judgement motion filed on July 15, 2010. (Borges Decl. ¶¶ 9-10.) In

August 2010, Colburn's attorneys spent 5.78 hours reviewing Chabad's opposition and communicating with Chabad's counsel regarding the discrepancy in the amount owed. (Borges Decl. ¶ 11.) A total of 15 hours were spent on the case in September 2010, 6 hours of which were spent traveling to court, and were billed at half of Borges's hourly rate. (Borges Decl. ¶ 12.) Approximately 15 hours were spent on Colburn's fee application, including time spent discussing settlement with the undersigned. (Borges Decl. ¶¶ 21-22.)

Chabad contends that Colburn's hours are unreasonable. First, Chabad contends that Colburn should not be compensated for the fees it expended as a result of its attorneys seeking the wrong amount of repayment. (Def.'s Mem. at 2-3.) Second, Chabad argues that a summary judgment motion is the most effective method for collecting on a slow paying promissory note, and that a motion for default judgment was an unnecessarily time-consuming use of time. (Def.'s Mem. at 3.) Chabad further contends that by relying on a default judgment, instead of a summary judgment motion, Colburn created an appealable issue of law. (Eliot Wales Affirmation ¶ 5.) Third, Chabad argues that Borges & Associates essentially have a contingency fee arrangement with Colburn, and that Colburn should not be permitted to recover fees because it has never paid its attorneys. (Def.'s Mem. at 4.) Fourth, Chabad argues that Borges's travel time is not billable. (Def.'s Mem. at 5.) Finally, Chabad argues that Colburn's fees incurred as a result of the fee dispute are excessive and unreasonable. (Def.'s Mem. at 6-7.)

The Court finds that Colburn's hours are reasonable, but should be reduced by the amount of time it incurred resolving the amount that Chabad was in default. Although it appears that Chabad may bear some responsibility for the $46,000 in payments not being initially credited to its account, Colburn, as the party moving for default, bears the burden of ensuring that it seeks the correct amount owed. Chabad should not be forced to pay the fees' incurred by

7

Colburn to correct their initial error. Therefore, the Court finds that Colburn should not be compensated for the 2.05 hours that Borges billed at $465 an hour for resolving the dispute over the amount of Chabad's default. (*See* Borges. Decl. ¶¶ 11,12, 20.) Accordingly, the Court recommends that Colburn's fee award should be reduced by $953.25.

The remainder of the hours, with the exception of the time billed for researching the fee application, are reasonable. Colburn's decision to file a default judgment motion instead of a summary judgment motion was a reasonable means to collect the money it was owed, and does not warrant a reduction in Colburn's fees. Colburn retained Borges & Associates on an hourly basis (Borges Decl. ¶¶ 3-4), and the Court rejects Chabad's contention that Colburn had a contingency fee arrangement. The fact that Colburn has not yet paid Borges & Associates for some of their work has no bearing on the reasonableness of a fee award in this case. Moreover, the amount of time spent drafting and researching the default motion was not excessive. The majority of the time spent on the motion was billed by associates. Mockler billed approximately 8 hours for research related to the motion, and Hansen billed approximately 7 hours for drafting the motion. (Borges & Associates Time Slips Submitted on Oct. 19, 2010.) Borges only spent 2.5 hours on the motion, reviewing the declarations and drafts shortly before they were filed. (*Id.*)

The Court finds that Colburn's decision to retain Borges & Associates, a firm based in Syosset, New York, which is located in the Eastern District of New York, to represent it in an action filed in this District was not unreasonable, and does not warrant the deduction of Borges's travel time. *See Trustees of New York Oil Heating Ins. Fund v. Anchor Talk Lines Corp.*, No. 09 Civ. 9997, 2011 WL 767162, *5 n. 9 (S.D.N.Y. Mar. 4, 2011) (Peck, M.J.) (awarding travel time to an attorney based in Long Island). Here, the retention of an out-of-district attorney was

reasonable because the motion for default judgment was not likely to require many court appearances. Borges made only two trips to the courthouse for conferences, and the second conference was only necessary because Chabad's attorney failed to appear for the first conference. (*See* Borges Decl. ¶¶ 12, 20.) Accordingly, Borges's travel time is billable, and Borges appropriately billed her travel time at 50% of her hourly rate.[2] *See Tlacoapa v. Carregal*, 386 F. Supp. 2d 363, 373 (S.D.N.Y. 2005) (noting that courts in this Circuit regularly reduce attorneys' fees 50% for travel time).

Finally, the Court finds that the 15 hours Colburn's attorneys expended on settlement and the fee application was unreasonable. In particular, Hansen spent ten hours researching and drafting the fee application. (Borges Decl. ¶ 22.) Although the litigation over fees in this case has been highly contentious, the amount of time spent on the application is unreasonable. It required a minimal amount of research, and should not have taken long to brief. Accordingly, the Court recommends reducing the amount Hansen billed for the fee application by 25%, which amounts to a reduction of $562.50 from Colburn's fee award.

In sum, the Court recommends that Colburn be awarded a total of **$20,039.92** in attorneys' fees. This award reflects the $21,555.67 in fees incurred by Borges & Associates minus the $953.25 it billed for resolving the dispute over the amount of the default judgment and $562.50 from the amount it billed for the fee application.

**B. Costs**

"Attorneys' fees awards include those reasonable out-of-pocket expenses incurred by

---

[2] The Court notes that Borges could reasonably be awarded at her full hourly rate for her travel time to the second conference because it was only necessary because Chabad's counsel failed to appear at the first conference. Borges does not seek compensation at her full hourly rate, and the Court declines to make such an award *sua sponte*.

attorneys and ordinarily charged to clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal citation omitted); *see also Mitland Raleigh-Durham v. Myers*, 840 F.Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients.") "However, expenses which are part of the attorney's ordinary overhead are not to be reimbursed." *SEC v. Goren*, 272 F. Supp.2d 202, 214 (E.D.N.Y. 2003) (quoting *New York State Nat'l Org. for Women v. Terry*, 737 F.Supp. 1350, 1363 (S.D.N.Y. 1990)).

Here, Colburn is seeking $82.86 in costs, a total that includes $48.00 in parking, $30.86 for mailing default notices to Chabad in 2006, and $4.00 for copying expenses. (Borges Decl. ¶ 13.) Chabad contends that Colburn should not be awarded the parking fee because it was unreasonable to hire an out-of-district attorney. (Def.'s Mem. at 5.) For the reasons discussed above, the Court finds that the parking fee is reasonable, and recommends that Colburn be awarded **$82.86** in costs.

## IV. CONCLUSION

The Court recommends that Colburn be awarded **$20,039.92** in attorneys' fees and **$82.86** in costs.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Richard M. Berman, 500 Pearl Street, Room 650, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those

objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. §636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: April 12, 2011**
**New York, New York**

*/s/ Ronald L. Ellis*
**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

**Copies of this Report and Recommendation were sent to:**

Counsel for Defendants
Eliot Wales
52 Riverside Drive
New York, NY 10024-6501

Counsel for Plaintff
Wanda Borges
Borges & Associates
575 Underhill Blvd.
Syosett, New York 11791